*547 OPINION.
Marquette :
The petitioner contends that the written agreement made by and between it and the Mobile Illuminating Company in 1906 was either a contract to sell in 1942, or a conditional sale made at the time of the execution of the written instrument, and that in either event no part of the money paid to the trustee in 1924, 1925 and 1926 pursuant to said agreement constituted income to it. The respondent contends that the payments made to the trustee by the Illuminating Company were lease rentals and that they were constructively received by and constituted income to the petitioner when paid to the trustee. Although the written instrument is denominated a lease, the words employed can not have the effect of changing its true nature, which is to be determined by the real intention of the parties. Hervey v. Rhode Island Locomotive Works, 93 U. S. 664.
The facts are that the Illuminating Company agreed to pay a trustee $100,000 down, in bonds and cash, and a fixed amount every six months thereafter for 36 years; to maintain the property in full repair and efficiency; to keep alive the franchises; and to pay all taxes, assessments, etc., levied against the property. Compliance with these and other conditions in the contract will entitle the Illuminating Company to a deed to the property, clear of encumbrances, at the end of the 36-year term. In our opinion the contracting parties did not enter into a lease, but a conditional contract of sale, and the payments made to the trustee were not rentals, but installments of the purchase price. Alexander W. Smith, Jr., Executor, 20 B. T. A. 27.
The evidence discloses that of the amounts thus far paid to the trustee by the Illuminating Company, no part has been received by the petitioner, and that the petitioner’s right to receive such payments is not vested and absolute, but is dependent upon certain conditions which may never be fulfilled. A somewhat similar situation arose in Woods v. Lewellyn, 252 Fed. 106, where the court held that an insurance agent’s commissions on renewal premiums were taxable only in the year in which received, because his right to the commissions was entirely contingent upon the payment of premiums by the policyholders, and that a contingent right of that character was *548 not income within the meaning of the income-tax statutes. To the same effect is our decision in Cleveland Trinidad Paving Co., 20 B. T. A. 772, where it was held that:
Amounts withheld by municipalities under paving contracts as funds to guarantee maintenance of the paving for a period of years and which funds the municipalities might themselves expend for maintenance and repairs (are) not accruable as income to the contractor during the withholding period.
We are of opinion that the present case falls within the principle laid down in the above cited cases, namely, that a taxpayer on the accrual basis need not include as income amounts to be received in the future where such receipt is dependent upon a substantial contingency. Therefore, there should be eliminated from the petitioner’s taxable income for each of the years in controversy, as determined by the respondent in the deficiency notices, the amount of $15,495.97.
The next complaint of the petitioner is that the deductions allowed by the respondent for wear, tear and exhaustion, including obsolescence, of its properties, are inadequate to take care of the consequences of those factors and, therefore, are not the reasonable allowances contemplated by the taxing statutes. The petitioner concedes that the respondent has used a proper valuation basis for the purpose of computing the allowances, but contends that a wrongful determination has resulted through the application to that basis of a composite rate which is based upon a longer life than the actual useful life of the property. After considering all of-the evidence presented in connection with this matter, we are of the opinion that the determination of reasonable allowances for depreciation, including obsolescence, requires the use of a much higher rate than the composite rate of 3.40 per cent used by the respondent, and that such allowances can be better determined by the use of a separate rate for each classification of depreciable property, based upon the average useful life of the .items included in the classification. Accordingly, we have set out in the findings of fact a rate for each classification which the evidence establishes is indicative of the average useful life of items included therein. These, rates are based upon the evidence of the two witnesses called by the petitioner, whose qualifications and experience entitle their opinions to great weight and respect, and whose testimony was unweakened by cross-examination and stands unrebutted.
On the evidence we conclude that the petitioner is entitled to deductions for wear, tear and exhaustion, including obsolescence, of its properties, for 1924, 1925 and 1926, of $167,003.20, $166,497.07 and $164,425.35, respectively; and since the respondent has made allowances of $103,454.03, $104,866.12 and $104,572.37, respectively, the net *549 income for 1924, 1925 and 1926, as determined by tbe respondent in the deficiency notices, should be reduced by $63,549.17, $61,630.95 and $59,852.98, respectively. The allowances which we have determined are based upon the same valuation bases as. used by the respondent and the rates set forth in our findings of fact. The petitioner is not entitled to any allowance in respect of the office building, since that structure was not completed until after the taxable years in controversy. Also, we conclude that the petitioner is not entitled to any allowance in respect of the properties which are the subject of the agreement with the Illuminating Company, since it appears that under the terms of that agreement all losses due to wear, tear and exhaustion, including obsolescence, of those properties is being and will be sustained by the Illuminating Company and not by the petitioner.
The next contention of the petitioner is that, the respondent having disallowed the loss deductions claimed in the returns for 1924 and 1925 in respect of the properties abandoned and discarded in those years, he should have eliminated from income the amounts reported as the proceeds realized from the salvaging of such properties. We find it necessary to decide this matter adversely to the petitioner, since the evidence does not show that the salvage realized did not exceed the estimated salvage taken into consideration in the determination of reasonable depreciation allowances, plus the aggregate of amounts previously charged for depreciation of these properties.
The respondent determined that the petitioner realized a net income for 1924 of $51,521.79. We have held that this should be reduced by $63,549.17 for additional depreciation, and by the amount of $15,495.97, erroneously included in income. The petitioner received nontaxable income in 1924 of $3,540.46, representing interest on obligations of a State, Territory, or political subdivisions thereof, or of the District of Columbia. Upon these facts, we find that the petitioner sustained a net loss for 1924, within the meaning of section 206 (e) of the (Revenue Act of 1926, of $23,982.89, and, accordingly, net income for 1925, as determined by the respondent in the deficiency notice, should be reduced by that amount.
The adjustment which we have directed to be made in the net income for 1925 for additional depreciation will leave a substantial net income for that year, and, consequently, the petitioner did not sustain any net loss for that year which can be deducted in computing net income for 1926.

Judgment will be. entered under Rule 50.